IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

ELIZABETH B.,

                Plaintiff,

          v.                                Civil Action No.
                                            8:23-cv-601 (DEP)

MARTIN J. O'MALLEY,
Commissioner of Social Security,[1]

                Defendant.

_____

APPEARANCES:                       OF COUNSEL:

FOR PLAINTIFF

SCHNEIDER & PALCSIK         MARK A. SCHNEIDER, ESQ.
57 Court Street
Plattsburgh, NY 12901

FOR DEFENDANT

SOCIAL SECURITY ADMIN.      CANDACE BROWN CASEY, ESQ.
OFFICE OF GENERAL COUNSEL
6401 Security Boulevard
Baltimore, MD 21235

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

_____

[1]     Plaintiff's complaint named Kilolo Kijakazi, in her official capacity as the Acting Commissioner of Social Security, as the defendant. On December 20, 2023, Martin J. O'Malley took office as the Commissioner of Social Security. He has therefore been substituted as the named defendant in this matter pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, and no further action is required in order to effectuate this change. See 42 U.S.C. § 405(g).

## ORDER

Currently pending before the court in this action, in which plaintiff seeks judicial review of an adverse administrative determination by the Commissioner of Social Security ("Commissioner"), pursuant to 42 U.S.C. §§ 405(g) and 1383(c), are cross-motions for judgment on the pleadings.[2] Oral argument was heard in connection with those motions on October 10, 2024, during a telephone conference conducted on the record. At the close of argument, I issued a bench decision in which, after applying the requisite deferential review standard, I found that the Commissioner's determination resulted from the application of proper legal principles and is supported by substantial evidence, providing further detail regarding my reasoning and addressing the specific issues raised by the plaintiff in this appeal.

After due deliberation, and based upon the court's oral bench decision, which has been transcribed, is attached to this order, and is incorporated herein by reference, it is hereby

---

[2]     This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order, once issue has been joined, an action such as this is considered procedurally as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

2

ORDERED, as follows:

1)    Defendant's motion for judgment on the pleadings is GRANTED.

2)    The Commissioner's determination that the plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is AFFIRMED.

3)    The clerk is respectfully directed to enter judgment, based upon this determination, DISMISSING plaintiff's complaint in its entirety.

David E. Peebles
U.S. Magistrate Judge

Dated:    October 29, 2024
          Syracuse, NY

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------x
ELIZABETH B.,

                    Plaintiff,

vs.                                   23-cv-601

KILOLO KIJAKAZI, Acting
Commissioner of Social Security,

                    Defendant.

-------------------------------------------------x
```

**DECISION**
October 10, 2024
the Honorable David E. Peebles
United States Magistrate Judge, Presiding

<u>APPEARANCES</u> (by telephone)

```
For Plaintiff:     SCHNEIDER & PALCSIK
                   57 Court Street
                   Plattsburgh, NY 12901
                      BY:  MARK A. SCHNEIDER, ESQ.

For Defendant:     SOCIAL SECURITY ADMINISTRATION
                   6401 Security Boulevard
                   Baltimore, MD 21235
                      BY:  CANDACE BROWN CASEY, ESQ.
```

*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
*P.O. Box 7367*
*Syracuse, New York 13261*
*(315)234-8546*

2

1        THE COURT:  Before I address the merits of this

2    case, there is a question of consent.  When this case was

3    filed it was assigned to my colleague, Magistrate Judge

4    Therese Wiley Dancks.  The consent form that appears at

5    docket number 5 was signed by plaintiff's counsel consenting

6    to have Magistrate Judge Dancks hear and decide the case with

7    direct appeal to the Second Circuit Court of Appeals.  When

8    the case was transferred to me, the docket entry noting the

9    transfer gave a deadline for withdrawal of consent, but I

10   wanted to ensure that the plaintiff does, in fact, consent to

11   my deciding the case with direct review by the Second

12   Circuit.

13       Attorney Schneider, does she consent?

14       MS. SCHNEIDER:  Yes, she consents and I consent to

15   your having jurisdiction.

16       THE COURT:  Thank you.

17       MS. SCHNEIDER:  You're welcome.

18       THE COURT:  Plaintiff commenced this proceeding

19   pursuant to 42, United States Code, Sections 405(g) and

20   1383(c)(3) to challenge an adverse determination by the

21   Commissioner of Social Security that plaintiff was not

22   disabled at the relevant times and therefore ineligible for

23   the benefits for which she applied.  The background is as

24   follows.

25       Plaintiff lives in Massena, New York, with her

3

fiance, and her fiance's parents, and a daughter who was age

ten at the time of the hearing in this case.  She was born in

November of 1984 and is currently 39 years of age.  She was

36 years old on the alleged onset of disability date of

12/4/20.

Plaintiff stands 5-foot, 8-inches in height and

weighs approximately 140 pounds.  She has a high school

degree.  The record is equivocal as to whether she did or did

not attend special education classes; at 366 she said yes, at

504 she said she was in regular classes.  She has two years

of college and achieved an Associate's Degree.  She does have

or had at one point a CNA license or certification.

In terms of work, plaintiff worked five years in a

hospital in a CNA position.  She has also been a personal

care aide, a cook, a barmaid, a cashier, and a dishwasher.

She stopped working on February 6, 2016.  She may have been

fired at one point, it appears that she was, through

absenteeism.  She also attributes the termination of her

employment to a disagreement with her supervisor.  That's at

44 to 45 of the Administrative Transcript.

Plaintiff suffers from many physical and mental

diagnosed impairments, including fibromyalgia, history of

traumatic brain injuries, syncope, narcolepsy, migraine

headaches, restless leg syndrome, lumbar spondylosis,

cervicalgia, tremors, history of carpal tunnel syndrome,

1  history of arthritis, an overactive bladder, fractured left

2  wrist, bilateral knee pain, bilateral hip pain.  Some of

3  these were attributed to a 2012 motor vehicle accident.

4          She previously self-medicated with morphine, but is

5  now on another medication, at page 50, buprenorphine, for

6  pain.

7          Mentally she suffers from depressive disorder,

8  bipolar disorder, anxiety disorder, post traumatic stress

9  disorder, and attention deficit hyperactive disorder.

10 Plaintiff's activities of daily living have been outlined at

11 506 to 507, 511, 734 to 735, and 739 of the Administrative

12 Transcript, including taking care of her personal needs,

13 cooking, cleaning, doing laundry, she can manage money,

14 socializes with family and friends.  She reads, watches

15 television.  She engages in childcare, including babysitting

16 for a friend.  Crafts.  She drives her daughter to and from

17 school approximately half mile.  She attends beauty pageants

18 with her daughter.  She home-schooled her daughter during the

19 COVID shutdown of schools.  And she does games on her phone.

20 She avoids shopping and does not take public transportation.

21 There is an indication at one point she also may have been

22 involved in inline skating.  Plaintiff is a smoker.

23          In terms of care providers, Dr. David Garrison is

24 her primary provider; Dr. Kejian Tang is her neurologist;

25 Dr. Duane Dixon and Nurse Practitioner Daniel King see the

1  plaintiff for pain, and she also receives mental health

2  treatment through Citizens Advocates, including through

3  Dr. Joshua Frank, a psychiatrist, and therapist Jaclyne

4  Newton.

5          Procedurally, plaintiff applied for Title II and

6  Title XVI benefits on November 30, 2020, alleging an onset

7  date originally of February 8, 2016 that was later amended to

8  December 4, 2020.  In support of her application, at

9  page 365, she listed various physical and mental impairments

10  on her function report.  Noteworthy is the fact that the

11  prior application, or prior applications I should say, were

12  made on April 4, 2016, denied by an administrative law judge

13  on August 7, 2016.  After commencing an action in the

14  Northern District of New York to challenge that

15  determination, there was a stipulation to remand.  An

16  administrative law judge on December 3, 2020 again denied

17  benefits.  This Court received this action on January 27,

18  2021, challenging that determination and affirmed it on

19  December 15, 2022.  Therefore, the onset date was adjusted to

20  December 4, 2020, the day after the administrative law

21  judge's decision.  Because plaintiff's date of last insured

22  status is March 31, 2020, only the Title XVI, as plaintiff's

23  counsel has acknowledged, application is at issue in this

24  case.

25          A hearing was conducted on September 21, 2021 by

1  Administrative Law Judge Jennifer Gale Smith, who issued an
2  adverse determination on October 27, 2021.  The Social
3  Security Administration Appeals Council denied plaintiff's
4  request for review of that determination on May 11, 2023,
5  making that administrative law judge decision a final
6  determination of the Agency.  This action was commenced on
7  May 18, 2023, and is timely.
8          In her decision, Administrative Law Judge Smith
9  applied the familiar five-step sequential analysis and
10 determined at step one that plaintiff had not engaged in
11 substantial gainful activity since December 4, 2020.
12          At step two, she determined that plaintiff does
13 suffer from severe impairments that impose more than minimal
14 limitations on her ability to perform basic work activities,
15 including fibromyalgia, depressive disorder, bipolar
16 disorder, anxiety disorder, PSTD, history of TBI, ADHD,
17 episodic narcotic abuse, syncope, history of narcolepsy,
18 migraine headaches, RLS, lumbar spondylosis, cervicalgia,
19 tremor, history of inflammatory arthritis, and history of
20 carpal tunnel syndrome.
21          At step three, she concluded that plaintiff's
22 conditions do not meet or medically equal any of the listed
23 presumptively disabling conditions set forth in the
24 Commissioner's regulations, specifically considering listings
25 1.15, 11.02, 11.04, 11.14, 11.18, 14.06, 14.09, 12.02, 12.04,

1    12.06, 12.11, 12.15, and concluded that, as I said,

2    plaintiff's condition does not meet or medically equal any of

3    those listings.

4            The ALJ determined that, notwithstanding her

5    impairments, plaintiff retains residual functional capacity,

6    or RFC, to perform light work, except claimant should not

7    work at unprotected heights, climb ladders, ropes or

8    scaffolds, or work in close proximity to dangerous machinery

9    or moving mechanical parts of equipment.  Claimant should not

10   drive as part of her job duties.  Plaintiff can occasionally

11   balance as defined in the selective characteristics of

12   occupations, or SCO, kneel, crouch, crawl, climb ramps and

13   stairs, and stoop.  Claimant can frequently reach, handle,

14   finger and feel.  The claimant can tolerate no more than

15   moderate levels of noise as defined in Appendix D of the SCO,

16   1983 Edition.  The claimant should avoid work outdoors in

17   bright sunshine and work with bright or flickering lights

18   such as one would experience welding or cutting metals.  The

19   claimant should have no more than occasional concentrated

20   exposure to headache irritants such as dust, odors, fumes and

21   gases.  The claimant should work at simple, routine and

22   repetitive tasks.  The claimant should work in a low stress

23   job defined as occasional decision-making, occasional

24   judgment required and occasional changes in the work setting.

25   The claimant should work at goal oriented work rather than

1  production pace rate work.  The claimant should have

2  occasional contact with co-workers, supervisors and the

3  public.

4          At step four, applying that RFC the administrative

5  law judge concluded that plaintiff is incapable of performing

6  her past relevant work.

7          At step five, with the assistance of testimony from

8  a vocational expert, the administrative law judge concluded

9  that, notwithstanding her impairments, plaintiff does retain

10 the ability to perform available work in the national

11 economy, citing the representative positions, those of linen

12 grader, produce weigher, shaker, and mail clerk, and

13 therefore was not disabled at the relevant times.

14          As the parties know, the Court's function in this

15 case is limited to determining whether correct, legal

16 principles were applied and the results are supported by

17 substantial evidence, defined as such admissible evidence as

18 a reasonable person would find adequate to support a

19 conclusion.  This standard is extremely deferential, as the

20 Second Circuit has noted in *Brault versus Social Security*

21 *Administration Commissioner*, 683 F.3d 443, 2012, and more

22 recently reiterated in *Schillo v. Kijakazi*, 31 F.4th 64, from

23 2022.

24          In this case plaintiff has raised essentially five

25 contentions.  The first is that the ALJ erred in evaluation

of the various medical opinions of record.  The second is

that at step two the administrative law judge should have

included incontinence as one of those impairments.  At step

three -- I'm sorry, the third issue raised is that the RFC is

not supported by substantial evidence and specifically does

not account for plaintiff's pain.  The fourth alleges

improper evaluation of plaintiff's claims of symptomatology.

And the fifth is based upon the alleged duty to recontact

psychiatrist Dr. Joshua Frank to ask for an explanation as to

why the medical opinion provided by Dr. Frank is not

supported by treatment notes.

In terms of evaluation of medical opinions, this

case is subject to the regulations which took effect for

applications filed after March 27, 2017.  Under those

regulations the commissioner no longer defers or gives any

specific evidentiary weight, including controlling weight, to

any medical opinions, including those from medical treatment

sources.  Instead, the ALJ is required to consider whether

the opinions are persuasive, primarily by considering whether

they are supported by and consistent with the record in the

case.

An ALJ in his or her decision must articulate how

persuasive those medical opinions are found to be sufficient

to provide for meaningful judicial review.  In this case

there are conflicting opinions in the record.  In the first

1    instance it is for the administrative law judge to resolve

2    conflicting medical opinions. *Veino v. Barnhart*, 312 F.3d

3    578, Second Circuit, 2002.  In this case there are opinions

4    that are essentially prior administrative medical findings

5    addressing claimant's mental health condition from Dr. S.

6    Hennessey, who issued opinions regarding both the Title II

7    and Title XVI applications.  The one addressing the Title XVI

8    application appears at 111 to 126 of the Administrative

9    Transcript, it is dated February 22, 2021, and it finds the

10   plaintiff did not suffer any severe medically determinable

11   mental impairment.

12          The administrative law judge discussed that opinion

13   at pages 25 and 26 of the opinion and found that it was

14   partially persuasive but found plaintiff to be more limited.

15   The case law is clear that it's not a basis to remand if an

16   opinion is accepted but the plaintiff is found more limited

17   because an RFC does not need to exactly mirror any one

18   particular medical opinion.

19          The plaintiff's mental health condition was also

20   addressed at a prior administrative medical finding by

21   Dr. H. Ferrin.  That appears at 149 to 173 of the

22   Administrative Transcript.  And it is also subject to 749,

23   750 of the transcript.  It's dated April 8, 2021.  The

24   determination of Dr. Ferrin's opinion regarding the so-called

25   B criteria is that plaintiff is mildly limited in

1  understanding, remembering, or applying information,

2  interacting with others, and adapting or managing oneself,

3  and moderately limited in concentration, persistence and

4  pace.

5          The mental health residual functional capacity is

6  found at page 170, and Dr. Ferrin concludes that plaintiff is

7  capable of understanding and remembering simple and more

8  detailed instructions and procedures.  She would have

9  difficulty with highly complex tasks.  She retains the

10  ability to perform sustained concentration and persistence.

11  She can maintain adequate attention and concentration to

12  complete work-like procedures and sustain a routine and

13  social interaction.  He found that although the claimant

14  displayed self-isolating behaviors, she was still able to

15  relate and respond in an appropriate manner.  He concluded

16  that the claimant is able to cope with changes and make

17  decisions.  And so essentially found the psychological

18  assessment of February 22, 2021 as persuasive.

19          The ALJ considered this to be also partially

20  persuasive at page 26 but found that plaintiff was more

21  limited.  The prior administrative medical findings

22  addressing plaintiff's physical condition, including first

23  Dr. A. Auerbach on February 25, 2021, 111 to 126, the

24  conclusion at page 123, is that based on the allegations of

25  chronic pain, myofascial findings on exam and pain management

1  records, the claimant is limited to lifting 20 pounds

2  occasionally, 10 pounds frequently, stand/walk six out of

3  eight hours, and sit six out of eight hours.  The

4  administrative law judge found this to be partially

5  persuasive, but again at page 26 found plaintiff to be more

6  limited.  The prior administrative findings of Dr. R. Mohanty

7  on April 14, 2021 appears at 149 to 173 and is also subject

8  to 751 to 752 affirms that finding, and again the

9  administrative law judge found it to be partially persuasive

10  but the plaintiff to be more limited.

11          Plaintiff's physical capacity was also addressed in

12  a consultative examination report issued by Dr. Elke Lorensen

13  based on her examination of the plaintiff on February 12,

14  2020.  It appears at 510 to 514 of the record.  The medical

15  source statement is no gross limitations for sitting,

16  standing, walking, and handling small objects with the hands,

17  mild limitations for bending, lifting and reaching.

18  Dr. Lorensen issued a second report on February 11, 2021.  It

19  appears at 738 to 741.  The medical source statement in that

20  report is no gross limitations for sitting, standing, walking

21  and using the hands, mild limitations for bending, lifting

22  and carrying.  The administrative law judge discussed these

23  two at page 27 and concluded that they are consistent with

24  light work but assessed greater limitations based upon the

25  testimony and claims of the plaintiff.

13

1          Mentally, plaintiff underwent two consultative

2     examinations, one by Dr. Dennis Noia on February 12, 2020, at

3     504 to 508.  In the medical source statement all of the

4     limitations expressed, to the extent there were any, were

5     equal to or less than moderate limitations.  The

6     administrative law judge found this to be partially

7     persuasive, that's at page 27, and noted that it is

8     consistent with the RFC.

9          The second consultative examination came on

10    February 11, 2021 by Dr. Dante Alexander.  It appears at 732

11    to 736.  It also contains mild to moderate limitations at

12    best, and the administrative law judge also concluded at

13    page 27 that this was partially persuasive and consistent

14    with the RFC.

15         There is a contrary opinion, as plaintiff's counsel

16    has noted, by Dr. Joshua Frank, who was a treating

17    psychiatrist.  There were two opinions, one from October 21,

18    2020, appears at 1219 to 1225 of the Administrative

19    Transcript.  It is extremely limiting and one could

20    convincingly argue it was disabling.  Dr. Frank opined

21    plaintiff would be off task 25 percent of a typical workday

22    and absent more than four days per month, and had extreme

23    limitations in many of the relevant domains.

24         The second was from September 22, 2021.  It appears

25    at 1393 and 1399, and is equally disabling.  The

1    administrative law judge discussed these two opinions at

2    page 27 and found that they were not persuasive.  The reasons

3    given were that they were inconsistent with objective medical

4    evidence, which as described earlier in the opinion

5    documented repeated benign mental status exams.  Two,

6    portions of Dr. Frank's assessments appear to be based on

7    subjective reports rather than any objective analysis.  And

8    specifically, the record did not show that there was any

9    testing given to objectify the length of time the claimant

10   could concentrate.  And three, his estimates as to time off

11   task and absences are speculative.

12            I have to say that I did not find any error in the

13   weighing of these conflicting opinions, and when it comes to

14   treatment notes I carefully reviewed the relevant treatment

15   notes, specifically emphasizing those from Citizen Advocates

16   that appear at 5F, 28F, 31F, 32F, 33F, 34F, 35F, 36F, 37F,

17   and I have to agree with the administrative law judge that

18   they show overwhelmingly normal and benign mental status

19   exams with very, very few exceptions.  So, I don't find any

20   error in the evaluation of the medical opinions.  I believe

21   they are consistent with the regulations.  And in the end, it

22   was for the administrative law judge to resolve any

23   conflicts.

24            In terms of the RFC, the claimant's RFC, as you

25   know, represents a finding of a range of tasks the claimant

1   is capable of performing notwithstanding his or her

2   impairments.  That means a claimant's maximum ability to

3   perform sustained work activities in an ordinary setting on a

4   regular and continuing basis, meaning eight hours a day for

5   five days a week, or an equivalent schedule.  And an RFC is

6   informed by consideration of the claimant's physical and

7   mental abilities, symptomatology, and other limitations that

8   could interfere with work activities on a regular and

9   continuing basis, as well as all of the relevant medical and

10  other evidence.  20 CFR Section 416.945, 96-8p.

11          In this case addressing first the physical

12  component, as I indicated before, Dr. Lorensen found mild

13  limitations to lifting and no limitations to standing and

14  walking.  This clearly supports a finding consistent with

15  light work, which is defined as lifting no more than

16  20 pounds at a time with frequent lifting or carrying of

17  objects going up to 10 pounds.  In addition, the ability to

18  stand and/or walk six hours out of the eight hour day, and to

19  sit intermittently for the remainder of the time.  *Poupore v.*

20  *Astrue*, 566 F.3d 303, Second Circuit 2009.  And again, the

21  existence of mild limitations supports light work.  *Michele*

22  *B. v. Commissioner of Social Security*, 2020 WL 2616150, from

23  the Northern District of New York, May 21, 2020.

24          The prior administrative medical findings of

25  Drs. Auerbach and Mohanty also support the determination in

1    terms of the physical components.  And as you know, prior

2    administrative medical findings issued by a state agency

3    consultant are generally accepted as able to provide

4    substantial evidence if supported because they are given by

5    professionals who have reviewed medical records and are

6    familiar with the Social Security Administration's rules and

7    regulations.  *Woytowicz v. Commissioner of Social Security*,

8    2016 WL 6427787, from the Northern District of New York,

9    October 5, 2016.  That report recommendation was accepted by

10   2016 WL 6426385 October 28, 2016, and also *Valdes-Ocasio v.*

11   *Kijakazi*, 2023 WL 3573761, from the Second Circuit, May 22,

12   2022.

13           I don't find any error in addressing the physical

14   component of the RFC.  The administrative law judge

15   considered the medical records, the medical opinions,

16   plaintiff's activities of daily living, and engaged in a

17   thorough discussion of all of those.

18           Turning to the mental component, again I find a

19   proper analysis of the opinions.  I do acknowledge one thing

20   that the plaintiff has argued, that in mental health cases

21   reliance on subjective complaints is not necessarily alone a

22   basis to reject an opinion of a treatment provider.  *Rucker*

23   *v. Kijakazi*, 48 F.4th 86, from the Second Circuit 2022.  But

24   the administrative law judge also addressed how Dr. Frank's

25   opinion was inconsistent with treatment notes, that's at page

1   27, and discussed that there was no objective test of

2   plaintiff's ability to concentrate.

3       Dr. Frank's opinion was in stark contrast with the

4   opinions of Drs. Ferrin and Hennessey, as well as Noia and

5   Alexander, and in the end it was for the administrative law

6   judge under *Veino* to resolve those conflicts.  I do note, as

7   I indicated previously, that the treatment notes of both

8   Dr. Frank and Therapist Jaclyne Newton do not appear to

9   support the opinions given by Dr. Frank, as the

10  administrative law judge noted at pages 23 and 25.

11      I also note that Dr. Dixon who treated plaintiff

12  for pain, and Dr. Tang, the neurologist, also noted on

13  several occasions normal mental status findings.  The

14  opinions of Dr. Noia and Dr. Alexander were accepted, and I

15  note that they did find moderate limitations which are not

16  incompatible with the ability to perform unskilled work.

17  *Sheri L. v. Kijakazi*, 2022 WL 561563, Northern District of

18  New York, February 24, 2022.  *Elizabeth B. v. Commissioner of*

19  *Social Security*, 2022 WL 17721254, Northern District of New

20  York, December 15, 2022.  And *Rigley G. v. Commissioner of*

21  *Social Security*, 2021 WL 1407507, from the Northern District

22  of New York, September 22, 2021.

23      Plaintiff has argued that her condition ebbs and

24  flows and that the administrative law judge did not recognize

25  that.  Again, I reviewed very carefully plaintiff's mental

1   health records.  I did not see evidence of such significant

2   ebbs and flows.  The plaintiff kind of offhand raised an

3   argument about listings and whether plaintiff's mental health

4   condition supported the listings.  In my view the plaintiff

5   failed to carry her burden of satisfying either the B or the

6   C criteria of the mental health listings.  The ALJ found only

7   one moderate limitation and that finding is supported.

8          In terms of the step two argument, the urinary

9   incontinence at step two, the plaintiff must show that he or

10  she has a medically determinable impairment that rises to the

11  level of severe, meaning that it significantly limits an

12  individual's ability to perform basic work activities.

13  Obviously, this is a de minimis requirement undoubtedly and

14  intended to screen out only the severe cases.  The mere

15  presence of a diagnosed impairment alone does not suffice.

16         The plaintiff in the end has the burden of showing

17  limitations.  The ALJ thoroughly discussed the question of

18  incontinence at page 16, noted that it was controlled with

19  medications, it's mostly at night and did not meet the

20  durational requirement of the regulations.  She also noted

21  that the cystoscopy that was performed was basically negative

22  and that the evidence did not show that the condition met

23  again the durational requirements.

24         I don't find any error, but if there was error, it

25  was harmless.  The administrative law judge continued with

1  the sequential analysis and at page 16 specifically noted

2  that she considered all of the plaintiff's medically

3  determinable impairments, whether they were deemed severe or

4  not.  In the end plaintiff failed to carry her burden of

5  showing how her incontinence would limit her ability to work,

6  and therefore there was no error.  *Moniqua W. v. Commissioner*

7  *of Social Security*, 2022 WL 683461, the Southern District of

8  Ohio, March 8, 2022.

9          The next issue raised concerns the assessment of

10  subjective reports.  The ALJ must take into account a

11  claimant's subjective complaints in rendering the five-step

12  analysis.  When examining the issue, however, the ALJ is not

13  required to blindly accept the testimony of a claimant, but

14  instead must assess first whether the claimant has a

15  medically determinable impairment that could reasonably be

16  expected to produce those symptoms, and then if so, must

17  evaluate both the intensity and persistence of those symptoms

18  and the extent to which they limit the ability to perform

19  work-related activities.  Social Security Rule 16-3p sets

20  forth various factors that must be considered.

21          The ALJ's assessment of subjective complaints is

22  entitled to substantial deference by a reviewing court.

23  *Madelyn S. v. Commissioner of Social Security*, 2022 WL

24  526233, that's Northern District of New York, January 27,

25  2021; *Aponte v. Secretary Department of Health and Human*

20

1   *Services of U.S.*, 728 F.2d 588, Second Circuit 1984; and

2   *Sheri L. v. Kijakazi*, 2022 WL 56153, Northern District of New

3   York, February 24, 2022.

4           The plaintiff's claims were recited by the

5   administrative law judge at page 22.  There followed a

6   comprehensive analysis of the evidence at pages 23 to 27.

7   The ALJ in the end discounted plaintiff's subjective reports

8   based on medical opinions in the record, and his treatment

9   history, and plaintiff's activities of daily living.  That,

10  as I indicated, is entitled to substantial deference, and

11  plaintiff is unable to convince me that no reasonable

12  fact-finder could agree with the administrative law judge's

13  determination in this case.

14          I note that there was an argument made that there

15  was a duty to recontact Dr. Frank because of the finding that

16  his opinions were not supported by treatment notes, and I

17  find no duty to recontact.  In this case the evidence in my

18  view was sufficient to permit the administrative law judge to

19  meaningfully assess whether the plaintiff had carried a

20  burden of establishing disability and there was no duty to

21  recontact Dr. Frank.

22          So in the end, I find no error.  I find that the

23  determination of no disability is supported by substantial

24  evidence and will, therefore, grant judgment on the pleadings

25  to the defendant and order dismissal of plaintiff's

1    complaint.

2            Thank you both.  I hope you have a good afternoon.

3                    *           *           *

4

5                    C E R T I F I C A T I O N

6

7            I, EILEEN MCDONOUGH, RPR, CRR, Federal Official

8    Realtime Court Reporter, in and for the United States

9    District Court for the Northern District of New York,

10   do hereby certify that pursuant to Section 753, Title 28,

11   United States Code, that the foregoing is a true and correct

12   transcript of the stenographically reported proceedings held

13   in the above-entitled matter and that the transcript page

14   format is in conformance with the regulations of the

15   Judicial Conference of the United States.

16

17

18

19        *Eileen McDonough*
          _____

20                    EILEEN MCDONOUGH, RPR, CRR
                      Federal Official Court Reporter

21

22

23

24

25